UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARTNER, INC., Plaintiff, v. PAUL SCHMITZ, Defendant. | : | CIVIL ACTION NO. MARCH 3, 2006 |

# VERIFIED COMPLAINT

Plaintiff, Gartner, Inc. ("Gartner"), through its counsel, for its complaint against the defendant Paul Schmitz ("Schmitz"), alleges as follows:

## INTRODUCTION

1. This is an action brought by Gartner for damages and equitable relief caused by the unlawful conduct of its former highly compensated executive, Paul Schmitz. In violation of his employment agreement with Gartner, Schmitz has not only accepted employment with a direct competitor of Gartner but he has also agreed to work for that competitor in a position in which he will perform the same services for the same clients as he did for Gartner. In so doing, Schmitz is using and disclosing Gartner's trade secrets and proprietary, confidential information – information that Schmitz wrongfully acquired through misuse of Gartner's computer system. Additionally, within hours of terminating his employment with Gartner, Schmitz began soliciting Gartner clients in direct breach of his agreement. Finally, also in breach of his agreement with Gartner, Schmitz has solicited Gartner employees to terminate

their employment with Gartner. In perpetrating the foregoing scheme and conspiring with a direct competitor of Gartner's to damage Gartner's business, Schmitz has breached his fiduciary duty to Gartner and engaged in an unlawful business conspiracy.

## THE PARTIES

2. The plaintiff Gartner is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Stamford, Connecticut.

3. The defendant, Schmitz, is an individual residing at 4956 Sentinel Drive, # 306, Bethesda, Maryland 20816-3562.

## JURISDICTION AND VENUE

4. Jurisdiction exists in this Court based on complete diversity of citizenship between the parties and because the value of the rights of the plaintiff implicated by the conduct alleged herein and the actual and potential loss to the plaintiff as a result of the defendant's unlawful conduct exceed $75,000 pursuant to 28 U.S.C. § 1332.

5. Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of the property that is the subject of this action is situated in Connecticut, and because the parties have expressly consented to the jurisdiction of the federal courts located in the state of Connecticut.

## GARTNER'S BUSINESS

6. Gartner is the leading global provider of research and analysis in the information technology ("IT") industry. Gartner's principal business segments include

research, consulting, executive programs and events. Gartner markets its research and analysis to IT vendors and users, government agencies and the investment community.

7. Among other things, Gartner offers for sale to its clients the EXP Program, through which Gartner provides highly customized membership privileges to senior IT executives of member companies. Gartner's EXP Program provides member executives with the tools and knowledge that they need to deliver exceptional business results for their organizations and to develop themselves as successful business leaders. The services offered through the EXP Program include specific strategic research aimed at senior IT Leaders and valuable peer-group networking.

8. One division of Gartner's EXP Program focuses on the public sector, including state, local and federal government agencies and organizations that provide services to the public sector (the "Public Sector EXP Program"). The services provided to members of the Public Sector EXP Program include, among other things, advisory services regarding procurement and market information and research, as well as educational and networking events.

## GARTNER'S AGREEMENT REGARDING CERTAIN CONDITIONS OF EMPLOYMENT

9. In consideration of their employment with Gartner, every employee is required to execute an Agreement Regarding Certain Conditions of Employment (the "Agreement"). A copy of the Agreement executed by Schmitz is attached hereto, and incorporated herein by reference, as Exhibit A.

10. The Agreement contains a non-competition/non-solicitation covenant in Section 5, which states in relevant part:

> 5. Non-Competition.
>
> (a) Definitions. The following terms shall have the meanings given them below:
>
> (i) Competitive Acts shall mean the development, marketing or selling of—or assisting others to develop, market or sell—a product or service which is competitive with the products or services of the Employer (both those existing during the Employment and those which are planned for the future and of which the Employee learns during the Employment), and the solicitation, directly or indirectly, of the Employer's clients or known prospects for the purposes of developing, marketing or selling such products or services, by the Employee (whether as a consultant, analyst, sales person, independent contractor, independent business venturer, partner, member, employee or otherwise).
>
> (ii) Non-Compete Area shall mean any location within a fifty (50) mile radius of the principal office in which the Employee worked at any time during the one year period prior to the termination of the Employment. If the Employee's principal office was in Stamford, Connecticut at any time during the one year period prior to the termination of the Employment, then the Non-Compete Area shall be defined as any location within (A) a fifty (50) mile radius of Stamford, Connecticut, and (B) the states of Connecticut, New York and Massachusetts.
>
> (b) Non-Competition.
>
> (i) Analyst or Consultant Position. The Employee agrees that, for a period of one year following the termination of the Employment for any reason, the Employee will not engage in any Competitive Acts: (A) with any client of the Employer with whom the Employer has a business relationship and with whom the Employee maintained contact at any time during the Employment; (B) with any product or service vendor with whom the Employer has a business relationship and with whom the Employee maintained contact at any time during the Employment; (C) with any entity or individual to whom the Employee submitted proposals for specific services on behalf of the Employer within one year prior to the termination of Employment; or (D) within the Non-Compete Area.
>
> (ii) Sales Position. The Employee agrees that, for a period of one year following the termination of the Employment for any reason, the

> Employee will not engage in any Competitive Acts: (A) with the particular office of any client of the Employer with which office the Employee maintained contact at any time during the Employment; (B) with any entity or individual to whom the Employee submitted proposals for specific services on behalf of the Employer within one year prior to the termination of Employment; or (C) within the Non-Compete Area.
>
> (iii) Other Positions. The Employee agrees that, for a period of one year following the termination of the Employment for any reason, the Employee will not: (A) engage in any Competitive Acts; (B) engage in any Competitive Acts with any entity or individual to whom the Employee submitted proposals for specific services on behalf of the Employer within one year prior to termination of Employment; or (C) engage in any Competitive Acts within the Non-Compete Area.

11. The Agreement contains a non-recruitment or hire covenant in Section 5, which states in relevant part:

> During the Employment and for three (3) years following the termination of Employment for any reason, the Employee agrees not to hire, recruit or encourage any person who is then an employee of the Employer to leave the employ of the Employer, whether on the Employee's own behalf or on behalf of any other person or entity.

12. Section 7 of the Agreement provides that Gartner is entitled to immediately obtain and enforce an injunction prohibiting any employee from violating any terms of the Agreement.

13. Section 11 of the Agreement contains a choice of law and forum selection clause pursuant to which the parties have consented to the jurisdiction of the federal courts in Connecticut. That section states:

> This Agreement and the rights of the parties shall be governed by and construed in accordance with the laws of the state of Connecticut without regard to its conflict of laws principles. Each of the parties consents in advance to the jurisdiction of the appropriate state or federal courts located within the state of Connecticut.

14. In connection with his employment by Gartner, Schmitz validly executed a copy of the Agreement on or about May 2, 1999.

**GARTNER'S PROPRIETARY AND CONFIDENTIAL INFORMATION**

15. Gartner has developed and uses a wide variety of proprietary, confidential and trade secret information including, but not limited to, financial information, product and service costs, prices, business strategies, product and service plans, marketing plans and studies, forecasts, computer programs, databases (and documentation and information contained in the databases), computer access codes, know-how, technologies, records, business relationships, client lists (including identities of clients and prospective clients, identities of individual contacts of business entities which are clients or prospective clients, client spending preferences, businesses or habits), subscription or consultant termination dates, and other confidential or propriety information that has not been made available to the general public ("Confidential Information").

16. Gartner's Confidential Information is crucial to Gartner as it enables the Company to compete in the marketplace effectively.

17. The Confidential Information is made up of Gartner's trade secrets in that:

a. The Confidential Information is not known by others outside of Gartner;

b. Gartner limits its own employees' access to the Confidential Information;

c. Gartner has taken reasonable steps to guard the secrecy of the Confidential Information;

d. The Confidential Information is extremely valuable to Gartner in providing it with a competitive advantage over its competitors, and it would be extremely valuable to its competitors;

e. Gartner has invested a vast amount of time and money on marketing, advertising, telemarketing, attending trade shows and conducting seminars to develop and compile the Confidential Information; and

f. It would be virtually impossible for the Confidential Information to be properly acquired or duplicated by others.

18. Gartner employees have access to the Company's Confidential Information in order to perform their job responsibilities.

19. Gartner employees are given a specific log-on name and password to provide entry into the computer system on the Company's local area network. By password protecting the computer system, Gartner guards against unauthorized access to its vital, valuable and confidential information.

20. A separate log-on name and password provided to Gartner employees permits them to access Gartner's computer system remotely by, for example, logging in on a personal computer.

21. Gartner's email servers for employees based in the United States, including its email server used to host Schmitz's email account, are located in Trumbull, Connecticut.

22. When a Gartner employee receives a log-on name and password to the computer, he/she knows that access to the information stored in the computer system is confidential and is not to be disclosed to unauthorized persons.

23. Gartner employees are expressly instructed that they are not permitted to disclose any of the Company's Confidential Information to anyone outside the Company or use Confidential Information other than for Company business. Gartner employees are also instructed not to remove any Confidential Information from the work premises unless authorized to do so.

24. In addition, Gartner employees are instructed that they are not to take any materials containing Confidential Information with them upon termination from the Company. Gartner's policies regarding its confidential, propriety and trade secret information are also set forth in the Company's Code of Conduct Policy, which is available to Gartner employees on the Company's intranet.

25. The Agreement also contains covenants and representations regarding Gartner's Confidential Information. In the Agreement, each Gartner employee acknowledges that the Company's confidential information includes items such as financial information, product and service costs, prices, business strategies, product and service plans, marketing plans and studies, forecasts, computer programs, databases (and documentation and information contained in the databases), computer access codes, know-how, technologies, records, business relationships, client lists (including identities of clients and prospective clients, identities of individual contacts of business entities which are clients or prospective clients, client spending preferences, businesses or habits), subscription or consultant termination dates, and other confidential or propriety information that has not been made available to the general public.

26. Pursuant to the Agreement, Gartner employees further acknowledge that all information related to the operation of Gartner's business is confidential and consists of trade

secrets of Gartner and that all such assets shall remain the property and trade secrets of Gartner and that the disclosure of any of these assets would cause irreparable harm to Gartner.

27. Pursuant to Section 1 of the Agreement, Gartner employees agree not to use or disclose any of Gartner's Confidential Information other than solely in the furtherance of the Company's business and to take all lawful measures to prevent the unauthorized use or disclosure of the Confidential Information to any third party and to take all lawful measures to prevent unauthorized persons or entities from obtaining or using the Confidential Information and not to take any actions which would constitute or facilitate the unauthorized use or disclosure of Confidential Information.

28. The Agreement further provides that a Gartner employee will not remove from the Company's offices any books, records, documents or any information which can be stored in or retrieved from a computer and that the employee will deliver to the company all confidential materials in the employee's possession or control upon termination of employment.

## SCHMITZ'S EMPLOYMENT WITH GARTNER

29. On or about April 27, 1999, Schmitz accepted a written offer of employment from Gartner (the "Employment Offer"). Pursuant to the Employment Offer, Schmitz became a highly compensated program director for Gartner's EXP Program, working out of Gartner's Arlington, Virginia offices, and specializing in Public Sector executive services.

30. In his capacity as Public Sector Program Director, Schmitz was responsible for providing advisory services through establishing and maintaining Public Sector client relationships for Gartner's EXP Program. Schmitz was the primary contact with a group of

Gartner's Public Sector clients, overseeing all aspects of the EXP Program for those clients, and advising Gartner management of the clients' operations, opportunities and challenges and how he would address those through either existing or additional services.

31. Through his client relationships in his work as a Public Sector Program Director, Schmitz was included in the client's strategic planning meetings and was given access to, and had knowledge of Gartner's proprietary financial and business information, including the EXP Program pricing strategies, profit margin information, marketing plans, service plans and product/service development plans, in order to carry out his duties.

32. In conjunction with accepting the Employment Offer, Schmitz executed an Agreement Regarding Certain Conditions of Employment, thereby entering into the Agreement detailed above.

33. Pursuant to section 5 of the Agreement, Schmitz agreed:

> that, for a period of one year following the termination of the Employment for any reason, the Employee will not: (A) engage in any Competitive Acts; (B) engage in any Competitive Acts with any entity or individual to whom the Employee submitted proposals for specific services on behalf of the Employer within one year prior to termination of Employment; or (C) engage in any Competitive Acts within the Non-Compete Area.

34. Pursuant to section 5 of the Agreement, Schmitz further agreed that, during the term of his employment and for a period of three years following the termination thereof, he would not, on his own behalf or for anyone else, hire, recruit or encourage any Gartner employee to leave the employ of Gartner.

## SCHMITZ'S DEPARTURE FROM GARTNER

35. On January 24, 2006, Schmitz provided Gartner with notice of his resignation. At that time, Schmitz refused to reveal the identity of his new employer.

36. From January 24, 2006 until February 3, 2006, while Schmitz remained a Gartner employee, Schmitz continued to refuse to reveal the identity of his new employer. During that time, Schmitz met with several Gartner Public Sector clients with which he had established relationships and informed them that he was leaving Gartner.

37. On February 1, 2006, Gartner provided Schmitz with a Post-Employment Reminder Notice ("Notice"), reminding Schmitz of his obligations under the Agreement. A copy of the Notice provided to Schmitz is attached hereto as Exhibit B.

38. Upon information and belief, on his final day of employment, Friday February 3, 2006, Schmitz forwarded an email from his Gartner email account to his personal home email account containing Gartner information, including client contact information and a power point presentation that was received by Schmitz from a Gartner client. That information was solicited by Schmitz in his capacity as a Gartner employee, for Gartner's benefit and, as such, was and is proprietary and confidential information that is the property of Gartner.

## SCHMITZ JOINS GARTNER'S COMPETITOR INPUT

39. On his final day of employment with Gartner, Friday, February 3, 2006, Schmitz sent an email from his Gartner account to Public Sector clients with whom he had established relationships, informing them that he was leaving Gartner and joining INPUT, Inc. ("INPUT"), which is a direct competitor of Gartner's. Schmitz provided those clients with his new contact information.

40. INPUT, which is located in Reston, Virginia, focuses on the public sector industry by helping companies develop federal, state and local government business and by helping public sector organizations achieve their objectives by providing procurement and market information, consulting, sales management tools and educational and networking events.

41. Upon information and belief, INPUT hired Schmitz to develop and head up its new Executive Program, which is a membership-based program for company executives in the government IT market. INPUT's Executive Program competes directly with Gartner's Public Sector EXP Program.

42. Wayne L. Adams ("Adams"), a former Gartner employee, currently is the Senior Vice President of Sales for INPUT.

43. Upon information and belief, Adams targeted and solicited Schmitz to head INPUT's Executive Program in order to capitalize on the goodwill and relationships Gartner has built up in the market and in order to use Gartner's Confidential Information known to Schmitz in order to compete with Gartner.

44. Upon information and belief, as a former Gartner employee, Adams was and is aware of Schmitz's obligations under the Agreement, including Schmitz's obligation pursuant to the non-competition/non-solicitation, non-disclosure and non-recruitment provisions of that Agreement.

45. Upon information and belief, Adams and Schmitz have attempted and continue to attempt to solicit Gartner employees to terminate their employment with Gartner and to work for INPUT to further capitalize on the goodwill and relationships that Gartner has built

up in the market and in order to use Gartner's Confidential Information known to those employees in order to compete with Gartner.

46. Upon information and belief, on February 3, 2004, following the termination of his employment with Gartner, Schmitz met with Dr. Jack Jones, Jr., Chief Information Technology Architect for the Center for Information Technology division of the National Institute of Health. Dr. Jones is a current Gartner client and a Signature EXP Program member for whom Schmitz was responsible as Public Sector Program Director.

47. On Saturday, February 4, 2006, following the termination of his employment with Gartner, Schmitz accessed Gartner's computer network without authorization and forwarded Gartner's confidential and proprietary Executive Programs Product Reference Card, which was clearly marked "Not for Client Use. For Internal [Use] Only" (the "EXP Reference Guide"). The EXP Reference Guide provides a virtual playbook to Gartner's EXP Program and would provide invaluable intelligence to a competitor by providing inside information regarding Gartner's products and services, its target market, the criteria for inclusion in the EXP Program, typical member profiles, and available add-ons to membership services.

48. On at least two occasions following the termination of his employment with Gartner, Schmitz accessed Gartner's computer network without authorization and forwarded contact information for at least two Gartner clients to his personal email account.

**COUNT ONE: (Breach of Non-Competition/Non-Solicitation Agreement)**

49. Paragraphs 1 through 48, above, are repeated and re-alleged as if fully set forth herein.

50. Schmitz has accepted an offer of employment with INPUT, which is Gartner's direct competitor in, among other things, the public sector executive consulting market.

51. Upon information and belief, Schmitz's duties at INPUT will include the development, marketing or selling of products and/or services that are competitive with Gartner's products and services.

52. By accepting INPUT's offer of employment, Schmitz has breached the non-compete provisions of the Agreement.

53. Upon information and belief, Schmitz has solicited a Gartner client on behalf of INPUT for the purpose of marketing and/or selling INPUT's products and/or services to such client.

54. By soliciting a Gartner client, Schmitz has breached the non-solicitation provisions of the Agreement.

55. Schmitz's actions have caused and will continue to cause imparable harm and other damages to Gartner to an extent currently undetermined.

**COUNT TWO: (Breach of Confidentiality/Non-Disclosure Agreement)**

56. Paragraphs 1 through 55, above, are repeated and re-alleged as if fully set forth herein.

57. In his capacity as Public Sector Program Director, Schmitz was exposed to Gartner's highly confidential and proprietary business plans and other Confidential Information.

58. Upon information and belief, Schmitz has disclosed or will inevitably disclose Gartner's Confidential Information to INPUT, including, but not limited to Gartner's client list, the EXP Reference Guide and Gartner's future business development plans.

59. Schmitz's actions were willful and deliberate and have caused and will continue to cause irreparable injury to Gartner for which there is no adequate remedy at law.

60. Schmitz's willful and deliberate actions have breached the express terms of the Agreement including, but not limited to, the confidentiality and non-disclosure covenants contained in Section 1 of the Agreement.

61. Schmitz's actions have caused and will continue to cause irreparable harm and other damages to Gartner to an extent currently undetermined.

**COUNT THREE: (Breach of Non-Recruitment/Non-Hire Agreement)**

62. Paragraphs 1 through 61, above, are repeated and re-alleged as if fully set forth herein.

63. Upon information and belief, Schmitz has attempted to recruit at least one Gartner employee on behalf of INPUT and has attempted to induce and/or solicit that employee to terminate his employment with Gartner.

64. In so doing, Schmitz's actions were willful and deliberate and have caused and will continue to cause irreparable injury to Gartner for which there is no adequate remedy at law.

65. Schmitz's willful and deliberate actions have breached the express terms of the Agreement including, but not limited to, the non-recruitment covenants contained in Section 5 of the Agreement.

66. Schmitz's actions have caused and will continue to cause irreparable harm and other damages to Gartner to an extent currently undetermined.

**COUNT FOUR: (Misappropriation of Trade Secrets pursuant to Va. Code §§ 59.1-336 et seq.)**

67. Paragraphs 1 through 66, above, are repeated and re-alleged as if fully set forth herein.

68. The acquisition by Schmitz of Gartner's client contact information, EXP Reference Guide and other trade secret information by improper means constitutes misappropriation of such trade secret information.

69. The use and dissemination, and threatened use and dissemination, by Schmitz of Gartner's client information, EXP Reference Guide and other Confidential Information constitute misappropriation of Gartner's Confidential Information.

70. Schmitz's actions in misappropriating Gartner's confidential, proprietary and trade secret information were willful and malicious and have caused and will continue to cause irreparable injury to Gartner for which there is no adequate remedy at law.

71. Moreover, Gartner has suffered damage as a result Schmitz's misappropriation, for which Gartner is entitled to an award of damages pursuant to Va. Code § 59.1-338.

72. Schmitz's misappropriation was willful and malicious, entitling Gartner to punitive damages and reasonable attorney's fees pursuant to Va. Code §§ 59.1-338(B) & 59.1-338.1.

**<u>COUNT FIVE</u>: (Breach of Fiduciary Duty)**

73. Paragraphs 1 through 72, above, are repeated and re-alleged as if fully set forth herein.

74. As Public Sector Program Director, Schmitz was privy to Gartner's Confidential Information and owed a fiduciary duty and duty of good faith and loyalty not to disclose or use this information to Gartner's detriment.

75. As Public Sector Program Director, Schmitz also owed a fiduciary duty and duty of good faith and loyalty not to recruit or induce or attempt to recruit or induce any Gartner employee to terminate his or her employment with Gartner.

76. By entering into the Agreement, Schmitz expressly acknowledged and agreed that his employment created a relationship of confidence and trust between him and Gartner with regard to the Confidential Information.

77. By entering into the Agreement, Schmitz expressly acknowledged and agreed that he was prohibited from soliciting or inducting or attempting to solicit or induce any Gartner employee to terminate his or her employment with Gartner.

78. As a result of the foregoing conduct, Schmitz has breached the fiduciary duty and duty of good faith and loyalty he owed to Gartner, thereby causing, and continuing to cause, irreparable injury and damages to Gartner for which Gartner has no adequate remedy at law.

**COUNT SIX: (Computer Crimes pursuant to Conn. Gen. Stat. §§ 52-570b & 53-452)**

79. Paragraphs 1 through 78, above, are repeated and re-alleged as if fully set forth herein.

80. Upon information and belief, Schmitz used Gartner's computer network to make an unauthorized copy of information residing on the Gartner computer network, including a power point presentation, that Schmitz had obtained from a Gartner client on behalf of Gartner and Gartner's confidential and proprietary EXP Reference Guide.

81. Upon information and belief, following termination of his employment with Gartner, Schmitz, without authorization, accessed Gartner's computer network for the purpose of obtaining Gartner's confidential and proprietary EXP Reference Guide and Gartner's client contact information.

82. By virtue of the foregoing, Schmitz has committed computer crimes in violation of Conn. Gen. Stat. §§ 53a-251, 52-570, & 53-451.

83. Gartner has been substantially damaged and irreparably harmed by the computer crimes committed by Schmitz in an amount to be determined at trial, and seeks damages pursuant to Conn. Gen. Stat. §§ 52-570(b) & 53-452.

**COUNT SEVEN: (Violation of Virginia Business Conspiracy Act pursuant to Va. Code §§ 18.2-499 et seq.)**

84. Paragraphs 1 through 83, above, are repeated and re-alleged as if fully set forth herein.

85. Schmitz has intentionally, willfully and without lawful justification conspired with INPUT to injure Gartner's business by:

a. Breaching the non-competition/non-solicitation, confidentiality/non-disclosure and non-recruitment covenants in the Agreement;

b. Misappropriating Gartner's Confidential Information;

c. Using Gartner's Confidential Information and capitalizing on the goodwill and relationships that Gartner has established in the market to compete unfairly with Gartner;

d. Soliciting and/or attempting to solicit Gartner clients; and

e. Soliciting and/or attempting to solicit Gartner employees to terminate their employment with Gartner.

86. As a result of the foregoing intentional, malicious and purposeful actions, which were undertaken without legal justification, Gartner has been and continues to be damaged in an amount to be determined at trial.

87. The foregoing actions of Schmitz show calculated, deceitful and unfair conduct, and reckless indifference to the rights of Gartner. Accordingly, Schmitz is liable to Gartner for treble damages pursuant to Va. Code § 18.2-500.

**WHEREFORE,** the Plaintiff seeks:

1. A preliminary and permanent injunction enjoining and restraining the defendant, Paul Schmitz:

a. From using directly or indirectly any of Gartner's confidential, proprietary or trade secret information;

b. From disclosing in any manner to anyone any of Gartner's confidential, proprietary or trade secret information;

c. From breaching the terms of the non-competition/non-solicitation covenants contained in the Agreement;

d. From breaching any of the terms of the confidentiality/non-disclosure covenants contained in the Agreement;

e. From breaching any of the terms of the non-recruitment or non-hire covenants contained in the Agreement; and

f. Ordering that the defendant, Paul Schmitz, deliver to this Court within seven (7) days of the entry of the preliminary injunction a certification to the Court that he has searched for and turned over, pursuant to the terms of the injunction order, all originals and all copies or derivations made therefrom of documents, forms, computer disks and print-outs containing information regarding Gartner's confidential, proprietary or trade secret information;

2. Monetary damages in such amount as are proven at trial;

3. Treble damages pursuant to Va. Code § 18.2-500;

4. All damages, including punitive and/or treble damages, pursuant to Conn. Gen. Stat. §§ 570b(c), 53-452 and/or Va. Code § 59.1-338;

5. Attorney's fees and costs pursuant to Conn. Gen. Stat. § 52-570b(e) and/or Va. Code Ann. §§ 59.1-338.1, 18.2-500;

6. Costs;

7. Interest; and

8. Any other such relief at law or in equity that the court deems just and appropriate.

**Jury Demand**

Trial by jury is hereby demanded as to all counts and allegations so demandable.

**PLAINTIFF,**
**GARTNER, INC.**

By: ______________________________

Glenn M. Cunningham (Fed. Bar No. ct09995)
Susan S. Murphy (Fed. Bar No. ct25321)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel: (860) 251-5000
Fax: (860) 251-5218
Email: gcunningham@goodwin.com
Email: smurphy2@goodwin.com
Its Attorneys

428001 v.04 S1

## VERIFICATION

Jose Ruggero duly certifies that he is the Managing Vice President, Gartner Executive Programs of Gartner, Inc., he has read the contents of the attached Verified Complaint, he is familiar with the contents therein, and he certifies that the contents of the Verified Complaint are true to the best of his knowledge, information and belief.

______________________________
Jose Ruggero.

STATE OF CONNECTICUT )
) ss.: Stamford
COUNTY OF FAIRFIELD )

Subscribed and sworn to before me this 1st day of March 2006.

Daria Cummings
______________________________
Notary Public/~~Commissioner of the Superior Court~~
My Commission Expires: 6/30/09